

**SO ORDERED.**

**SIGNED this 29 day of August, 2014.**

_____
**David M. Warren**
**United States Bankruptcy Judge**

_____

# UNITED STATES BANKRUPTCY COURT
## EASTERN DISTRICT OF NORTH CAROLINA
### RALEIGH DIVISION

IN RE:

LUVERTA MEHETABEL JEFFREY,                    CASE NO. 14-03558-5-SWH

DEBTOR.                                                           CHAPTER 13

### ORDER IMPOSING SANCTIONS ON MIRA AUTO SALES, LLC

This matter comes on to be heard upon the Motion for Contempt and Sanctions for Failure to Comply with Court Order ("Motion for Sanctions") filed by Luverta Mehetabel Jeffrey ("Debtor"). The court conducted a hearing in Raleigh, North Carolina on August 20, 2014. Sheree Cameron, Esq. of Cameron Bankruptcy Law appeared for the Debtor. An individual named Monte Hirsch attended the hearing as a representative of creditor Mira Auto Sales, LLC ("Mira"), but because Mr. Hirsch is not a licensed attorney, he was precluded from making an appearance on behalf of Mira or representing Mira pursuant to E.D.N.C. LBR 2090-1. Based upon the evidence presented and the arguments of counsel, the court granted the Motion for Sanctions at the conclusion of the hearing. Consistent with its ruling, the court makes the following findings of fact and conclusions of law:

1.      This matter is a core proceeding pursuant to 28 U.S.C. § 157, and the court has jurisdiction pursuant to 28 U.S.C. §§ 151, 157, and 1334.  The court has the authority to hear this matter pursuant to the General Order of Reference entered August 3, 1984 by the United States District Court for the Eastern District of North Carolina.

2.      The Debtor filed a petition for relief under Chapter 13 of the United States Bankruptcy Code on June 19, 2014 ("Petition Date').

3.      The Debtor is the owner of a 2007 GMC Envoy ("Vehicle").  The Debtor executed a promissory note ("Note") in favor of Mira in connection with the purchase of the Vehicle.  The Note is secured by a lien on the Vehicle under a security agreement and presumably perfected by a lien on the certificate of title.  The balance due on the Note as of the Petition Date was approximately $771.00.

4.      On or about June 10, 2014 and prior to the Petition Date, Mira repossessed the Vehicle from the Debtor because of an alleged default under the Note.

5.      On June 19, 2014, the Debtor filed a Motion for Turnover, which the court granted by Order ("Turnover Order") entered June 30, 2014.  The Turnover Order required Mira to return the Vehicle to the Debtor immediately.

6.      Mira failed to abide by the terms of the Turnover Order.  On or about July 7, 2014, the Debtor delivered a copy of the Turnover Order to Mira, but Mira refused to return the Vehicle.

7.      At the hearing Kerry Cameron, Ms. Cameron's paralegal, testified regarding his communications with Mira during efforts to recover the Vehicle, including the following:

    a.      Mr. Cameron placed a telephone call to Mira to advise of the Debtor's bankruptcy petition.  During that conversation, a representative from Mira told Mr.

Cameron that Mira would not return the Vehicle and instead would be selling the Vehicle;

    b.    Mr. Cameron received a telephone call from an individual claiming to work at Mira. During the telephone call, the individual stated the Debtor was a "loser," and that Mira would return the Vehicle but only after it received the sum of $2,000.00;

    c.    Mr. Cameron placed a telephone call to Mira to ascertain the appropriate address for hand-delivery service of the Motion for Turnover upon Mira. During that telephone call, a representative of Mira told Mr. Cameron that Mira had a new address. Mr. Cameron drove to the address provided by the representative, only to discover that the address was a county landfill; and

    d.    Mr. Cameron received two telephone calls from an individual claiming to work at Mira. The individual refused Mr. Cameron's request that the present and future communications be in writing. The Mira representative responded by threatening Mr. Cameron that he would "take [him] to court."

8.    Because of Mira's refusal to abide by the terms of the Turnover Order, the Debtor was forced to hire a taxi service to get to and from her job at Kroger five days per week. The Debtor spent $24.00 daily on taxi transportation, or $120.00 each week. During the approximately six week period beginning July 7, 2014 when the Debtor delivered the Turnover Order to Mira and ending on the day before the hearing, the Debtor would have spent approximately $720.00 on taxi transportation to and from Kroger.

9.    The Debtor also obtained a second job ("Second Job") shortly before the Petition Date. The anticipated start date was June 23, 2014. Having no access to the Vehicle and living too far to make other transportation alternatives feasible, the Debtor was forced to delay her start

3

date at the Second Job until August 15, 2014. The terms of the Second Job are 40 hours per week at a pay rate of $10.00 per hour. The Debtor missed approximately five and one half weeks of potential gross income during the period beginning July 7, 2014 when she delivered the Turnover Order to Mira and ending August 15, 2014 when she started the Second Job. The Debtor would have earned $2,200.00 in gross income during that five and one half week period.

10. Mira's refusal to return the Vehicle to the Debtor has caused the Debtor embarrassment, stress and anguish, and has affected the Debtor's daily routine. The Debtor has been forced to cancel doctor appointments for both her children and herself. She missed her children's end of year school performances and has also been unable to visit her brother, who recently had open heart surgery, in order to help him in his recovery.

11. The Debtor has expended financial resources that would not have been necessary if Mira had complied with the Turnover Order. She also would have generated additional income to fund the Chapter 13 Plan proposed in anticipation of having the Vehicle. Notwithstanding these expenses, the Debtor is in compliance with her Plan.

12. Ms. Cameron and her staff have expended approximately ten hours in their efforts to recover the Vehicle. The court finds that $250.00 per hour is a reasonable rate at which to compensate counsel for the Debtor.

13. Since the Petition Date, Mira has shown an utter disregard for the United States Bankruptcy Code and the Orders of this court. Mira's actions and failure to act have resulted in damages to the Debtor and have required counsel for the Debtor to expend significant time and expertise in the recovery of the Vehicle; now therefore,

It is ORDERED, ADJUDGED and DECREED as follows:

1. Mira shall return the Vehicle to the Debtor no later than 6:00 p.m. on August 20, 2014, at Sun Suites of Raleigh, 3215 Capital Boulevard, Raleigh, North Carolina 27604;

2. The remaining balance owed under the Note is deemed satisfied and paid in full;

3. Mira shall satisfy and cancel its lien upon the Vehicle's certificate of title and return that certificate of title to the Debtor not later than August 30, 2014;

4. Mira shall remit to the Debtor no later than August 30, 2014 the sum of $5,000.00, which represents reimbursement for expenses incurred and damages suffered by the Debtor as a result of Mira's continued refusal to abide by the terms of the Turnover Order. These funds shall be paid directly to the Debtor or to Cameron Bankruptcy Law in trust for the Debtor. These funds shall not be deemed to be property of the bankruptcy estate but shall be property of the Debtor which she may use at her discretion; and

5. Mira shall remit to Cameron Bankruptcy Law, 1719 Crag Burn Lane, Raleigh, North Carolina 27604, no later than August 30, 2014, the sum of $2,500.00, which represents compensation for time spent filing the Motion for Turnover and the Motion for Sanctions, the related court appearance, as well as for time spent on thwarted efforts to recover the Vehicle.

END OF DOCUMENT